**ARI LAW, P.C.**
Ali Ari Aalaei, SBN 254713
*ali@arilaw.com*
Benjamin Martin, SBN 257452
*bmartin@arilaw.com*
90 New Montgomery Street, Suite 900
San Francisco, CA 94105
Telephone: (415) 830-9968
Facsimile: (415) 520-9456

Attorneys for Plaintiff Ali Abbas

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ABBAS, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> UNIVERSITY OF SOUTHERN CALIFORNIA, a business entity; and DOES 1-10, inclusive, <br><br> Defendants. | **JURY DEMANDED** <br> Case No. <br><br> **COMPLAINT FOR:** <br><br> **(1) EMPLOYMENT DISCRIMINATION – TITLE VII;** <br><br> **(2) EMPLOYMENT HARASSMENT – TITLE VII** |

1

PLAINTIFF'S TITLE VII COMPLAINT

COMES NOW, Plaintiff DR. ALI ABBAS ("Plaintiff" or "Abbas"), and for causes of action against Defendant UNIVERSITY OF SOUTHERN CALIFORNIA and Does 1 through 10 ("Defendant or USC") alleges as follows.

## THE PARTIES, JURISDICTION AND VENUE

1. At all times mentioned herein, Plaintiff resided in Los Angeles County, State of California.

2. At all times mentioned herein, Defendant was Plaintiff's employer and regularly employed more than 4000 employees in the City and County of Los Angeles in California. The employment practices alleged to be unlawful were and are now being committed within the County of Los Angeles in the State of California, which is within the jurisdiction of the United States District Court, Central District of California. Venue is therefore proper in the United States District Court, Central District of California. 28 U.S.C. § 1391(b)(1)-(2); 42 U.S.C. Section 2000e-5(f)(3). Subject matter jurisdiction is proper in United States District Court, Central District of California pursuant to 28 U.S.C. §§ 1331, 1343.

3. Plaintiff is ignorant of the true names or capacities of Defendants sued herein as Does 1 to 10, inclusive, and therefore sue said Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names or capacities when ascertained.

4. At all times mentioned herein, Defendant, and those acting on its behalves, and each of them, were agents, partners, co-conspirators, and/or employees of the other and, in doing the things hereinafter alleged, were acting within the course and scope of such agency and/or conspiracy and/or at the direction of or with the permission and consent of Defendant.

## GENERAL ALLEGATIONS

5. Plaintiff is a member of several protected classes under which federal law prohibits discrimination and harassment. He is a middle-eastern man and he is a practicing Muslim. As referenced hereinafter in this Complaint, "Protected Class" shall mean middle-eastern man and practicing Muslim.

6. On May 20, 2014, Defendant offered Plaintiff tenured employment as Professor of Industrial and Systems Engineering and of Public Policy, and Director of the University's CREATE Center for Risk and Economic Analysis of Terrorism Events (funded by the Department of Homeland Security). Plaintiff had alternative employment opportunities but accepted Defendant's offer of

employment and tenure at the University, relying thereupon, and moved to Los Angeles. After accepting employment, Plaintiff discovered that his salary and his administrative stipend were substantially lower than those of his predecessor, who was not a member of Abbas' Protected Class.

7. Throughout Plaintiff's employment, continuing to the present, he was targeted and suffered through harassing conduct from Defendant and its agents and employees based on being a member of his Protected Class. USC employee Southers sent text messages referring to Plaintiff and his work as being "radicalized" and as an "insurgency" and when USC discovered those texts in May 2019, USC failed to reprimand, discipline or admonish the offending USC employee for sending those texts. Plaintiff was extremely disturbed by USC's refusal and failure to address or discipline the senders of the offensive texts, which indicated to Plaintiff that USC endorsed and ratified the sending and content of the texts. In 2019, USC forced Plaintiff to undergo extremely taxing interrogations conducted by USC during Ramadan, and scheduled the interrogations to occur during Ramadan to harass him and for the specific purpose of making it more difficult for Plaintiff to prepare, participate and perform, and for the specific purpose of encountering Plaintiff during a weakened state due to his Ramadan fasting regiment. USC did so knowing that Dr. Abbas is an observant Muslim that fasts during Ramadan. Plaintiff was also the target of belittling jokes relating to his membership of the Protected Class, and the happening of those belittling jokes were relayed to USC administration, which did nothing in response. For example, Plaintiff had expressed his pride in both his national origin of Egypt and his U.S. Citizenship, and USC employees responded with the degrading joke: "so you think you're African-American, huh?" The stereotype trope of the-haggling middle-eastern-man was invoked throughout Plaintiff's employment, and was directed at Plaintiff by USC in response to Plaintiff raising concerns regarding wasteful spending of DHS funds and other USC funds. Plaintiff was teased "why do you like haggling" when he expressed concerns with the wasteful use of government and USC funds in his fiduciary role. USC and its employees and agents subjected Plaintiff to harassing conduct that other USC employees that are not members of the Protected Class were not subjected to. In 2019 Plaintiff was harassed for complying with his jury duty requirements. USC harassed Plaintiff for expressing his view to DHS regarding a national security model, to which he would not have been subjected if he was not a member of the Protected Class. This harassing conduct pervaded Plaintiff's

3

PLAINTIFF'S TITLE VII COMPLAINT

employment. At the outset of Plaintiff's employment, there was no overlap with his predecessor, which is USC's custom, and which USC did not follow as to Plaintiff because Plaintiff is a member of the Protected Class. During USC events, Plaintiff was harassed for using a prayer reminder application on his mobile phone. Plaintiff was encouraged to not use the prayer reminder, and USC employees stated to Plaintiff that he would "not last long in the Homeland Security World" if he continued to use the Islam prayer reminder. After USC was notified of this harassment, it refused and failed to discipline Southers, which indicated to Plaintiff that USC endorsed and ratified Southers' harassment based on Plaintiff's practice of his religion  USC denied Plaintiff's request to assume a rotating directorship program with the National Science Foundation, which USC would not have denied if Plaintiff was not a member of the Protected Class. Budgeting and project information were withheld from Plaintiff, which was necessary for Plaintiff to execute his job duties, and the same information was freely shared with Plaintiff's predecessors and successors in the various positions that Plaintiff has held at USC, who were not members of the Protected Class, and the withholding of that information was done because Plaintiff is a member of the Protected Class. USC and its agents and employees contacted DHS for the purpose of communicating false information about Plaintiff in order to sabotage Plaintiff's relationship with DHS, which was critical to Plaintiff's proper performance of his job duties—USC did so based on Plaintiff's membership of the Protected Class. During Plaintiff's employment, USC and its agents and employees decided that they did not want a member of the Protected Class serving as a director of a program involving the subjects of terrorism and homeland security, and implemented a campaign of harassment against Plaintiff to damage his career, to create a pretext for removing Plaintiff from his directorships, and to pressure Plaintiff to resign. Plaintiff would not have been subjected to the harassment if he was not a member of the Protected Class.

The harassment and islamophobia reached levels that jeopardized Dr.Abbas' safety. Plaintiff was subjected to threats of physical violence by John Calichio, an investigator in Los Angeles District Attorney office and father of a former USC employee. By February 2019 and sooner, the University learned of a threat of physical violence against Dr. Abbas, which was communicated to Southers and to other USC employees and the USC administration. The threat of violence was even included in an official USC

PLAINTIFF'S TITLE VII COMPLAINT

report. The University did nothing to protect Abbas from this threat of physical violence nor did they even notify Abbas that a threat of physical violence had been made against him. Had Abbas not been a member of the Protected Class, USC would have addressed the threat of physical violence made by John Calichio and/or would have notified Abbas of the threat against him. USC wanted to create a hostile work environment, and did create a hostile work environment for Dr. Abbas because he is a member of the Protected Class.  USC harassed Dr. Abbas using Islamophobia tropes, which other similarly situated employees were not subjected to who were not members of the Protected Class.  USC sought to marginalize and exclude Dr. Abbas from the privileges of employment based on his Protected Class by engaging in the conducted alleged herein.  USC harassed Dr. Abbas by falsely characterizing him with the stereotype tropes of Islamophobia including suspicion, and framing him as intolerant, and untrustworthy. USC's employees and agents accused Plaintiff that he "has issues with women" in performing his job duties, referring to the stereotype that a member of the Protected Class is unable to treat men and women equally.  Other similarly situated employees who were not members of the Protected Class were not subjected to this harassment.

   Employees and agents of Defendant also held private meetings in which they characterized the departments in which Plaintiff worked as "been militarized" and in which they characterized Plaintiff as a "dictator," further perpetuating the Islamophobic hostile work environment.  USC learned about those conversations and failed to reprimand the individuals, or in any way stop the harassing conduct. USC reached out to its employees at various departments in which Plaintiff worked, and also reached out to individuals outside of USC and urged them not to work with Plaintiff, which was part of USC's attempts to marginalize Plaintiff based on his membership in the Protected Class.

   The harassment by USC and its employees and agents was severe enough to alter the terms, conditions and/or privilege of employment.  Plaintiff was humiliated by the harassment, and suffered severe emotional distress, which required Plaintiff to seek urgent care in hospital emergency rooms. This harassing conduct unreasonably interfered with Plaintiff's work performance, and created an abusive work environment. All of the above misconduct was unwelcome, and occurred through the date of this

5

PLAINTIFF'S TITLE VII COMPLAINT

complaint. Plaintiff would not have been subjected to the above-described harassing conduct if he was not a member of the Protected Class.

8. The harassment also took the form of workplace investigations, interrogation techniques and disciplinary actions to which he would not have been subjected if he was not a member of the Protected Class. The 2019 investigations and interrogations were conducted in an oppressive and harassing manner to which Plaintiff would not have been subjected if he was not a member of the Protected Class. The manner in which the investigations and interrogations were carried out and then used to "find facts" was atypical, and Plaintiff was subjected thereto because he is a member of the Protected Class. The outcome of the investigations and interrogations resulted in both unlawful and unprecedented discipline, which was imposed because Plaintiff is a member of the Protected Class. In addition, after the unlawful investigations, interrogations and discipline was imposed, USC served an "admonishing letter" making false allegations and threatening more severe sanctions, and deprived Plaintiff of the right to defend himself because Plaintiff was a member of the Protected Class. The harassing conduct described in paragraphs 7 and 8 expressly arises from harassment and only harassment. Dr. Abbas' harassment claims are expressly excluded from the parties' arbitration agreement. Plaintiff will prove at trial that all allegations set forth herein arose from harassment. The harassing conduct described in paragraphs 7 and 8 and the use of Islamophobic tropes against Plaintiff was done with the goal of crushing his spirit and forcing Plaintiff to submit his resignation, which is the only practical way to oust Plaintiff without wrong doing since he is a tenured professor. Similarly situated USC employees that are not members of the Protected Class were not subjected to the above-described misconduct. Plaintiff's compensation, terms, conditions, and privileges of employment were substantially impaired, and his future compensation, terms, conditions, and privileges of employment will be substantially impaired. The casted dispersions caused reputational and emotional injuries.

9. Prior to bringing this harassment action, Plaintiff timely filed a complaint with the California Department of Fair Employment and Housing ("DFEH") as to the claims and causes of action alleged in this lawsuit. Plaintiff exhausted his administrative remedies and received a right-to-sue from

6

PLAINTIFF'S TITLE VII COMPLAINT

the DFEH, and timely brought this action within the statutory period after the exhaustion of his administrative remedies.

### FIRST CAUSE OF ACTION – Violation of Title VII: Discrimination on the Basis of Religion, Ancestry, National Origin/Ethnicity (42 U.S.C. § 2000e-2(a))

10. Plaintiff herein re-alleges and incorporate by reference each and every allegation contained in the instant pleading.

11. Plaintiff's Protected Class is subject to protections under Title VII, which makes it an unlawful employment practice for an employer to discriminate against an employee with respect to his compensation, terms, conditions, or privileges of employment, or to limit, segregate or classify the employee in any way that would deprive or tend to deprive him of employment opportunities or otherwise adversely affect his employment status on the basis of his religion, ancestry, national origin/ethnicity, and race/color. 42 U.S.C. § 2000e-2(a).

12. USC discriminated against Plaintiff by subjecting him to disparate terms and conditions of employment based on his religion, ancestry, national origin/ethnicity. Among other actions, USC reassigned Plaintiff job duties and isolated him from his colleagues, denied him a raise, denied him work opportunities that would have led to a raise, denied him promotions, subjected Plaintiff to unlawful discipline based on his membership in the Protected Class, subjected to Plaintiff to different, more burdensome, and harsher working condition because of Plaintiff's membership in the Protected Class, prevented Plaintiff from enjoying the full benefits of his compensation and terms of employment monetarily, and by preventing him from publishing and speaking engagements.

13. Because of his membership in the Protected Class, USC discriminated against Plaintiff, and subjected Plaintiff to disparate treatment, and a hostile work environment. Defendant, its supervising and managing agents and employees subjected Plaintiff to discrimination and in violation of 42 U.S.C.A. § 1981, et. seq. and 42, U.S.C.A., § 2000e-2, et. seq. Defendant failed or refusing to take appropriate action to remedy the effects of discriminatory and hostile acts perpetuated USC employees and agents in violation of 42 U.S.C.A. § 1981, et. seq. and 42, U.S.C.A., § 2000e-2, et. seq.

14. The alleged discriminatory comments and conduct constitute unlawful discrimination for which Defendant Cisco is liable under 42 U.S.C. § 2000e-2(a).

15. The above said acts were perpetrated upon Plaintiff by a supervisor, and/or Defendant knew or should have known of the conduct but failed to take immediate and appropriate corrective action.

16. As a proximate result of the wrongful conduct of Defendant, Plaintiff has suffered and continues to suffer a loss in earnings and other employment benefits according to proof at time of trial. As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff suffered severe humiliation, emotional distress and mental anguish all to his damage in an amount to be ascertained according to proof.

17. Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees.

18. The conduct of Defendant as described above, was malicious, fraudulent, or oppressive and was done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendant's actions. Defendants intended to cause injury to Plaintiff, or was the despicable conduct was carried on by the Defendants with a willful and conscious disregard of Plaintiff's rights and subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights. Defendant and its agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against Defendant. The acts of Defendant were done fraudulently, maliciously and oppressively and with the advance knowledge, conscious disregard authorization, ratification or act of oppression on the part of Defendant's officers, directors, or managing agents. The actions and conduct of Defendant were intended to cause injury to Plaintiff and constituted deceit and concealment of material facts known to Defendant with the intention to deprive Plaintiff of property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

**SECOND CAUSE OF ACTION – Hostile Work Environment Title VII Violation – [42 U.S.C. § 2000(e)]**

19. Plaintiff herein re-alleges and incorporate by reference each and every allegation contained in the instant pleading.

20. Title VII prohibits harassment as a form of discrimination when it creates a hostile work

environment. Employers are liable for the harassment of their supervisors. 42 U.S.C. § 2000e-2(a). USC' conduct, as alleged, violated Title VII [42 U.S.C. § 2000e].

21.     USC committed unlawful employment practices subjecting USC to liability for the unwanted and unwarranted harassment towards Plaintiff, which created a hostile work environment, in whole or in part on the basis of Plaintiff's membership in the Prospected Class, in violation of 42 U.S.C. § 2000(e)(a). The unlawful conduct alleged above was engaged in by USC and other USC employees and agents, who were acting on behalf of USC at all times relevant to this Complaint within the scope and course of their employment. Such harassment was so severe and pervasive that it altered the conditions of Plaintiff's employment, creating a hostile, abusive work environment and thereby endangering Plaintiff's physical and mental health and making his working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

22.     As a direct and legal result of Defendant's and its officers, managing agents and its supervisors' conduct, Plaintiff has suffered and continues to suffer consequential and special damages, including but not limited to substantial losses in earnings, other employment benefits, as well as emotional distress damages, and attorneys' fees, in the amount according to proof at trial.

23.     Plaintiff requests a reasonable award of attorneys' fees and costs, including expert fees

24.     The conduct of Defendant as described above, was malicious, fraudulent, or oppressive and was done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendant's actions. Defendants intended to cause injury to Plaintiff, or was the despicable conduct was carried on by the Defendants with a willful and conscious disregard of Plaintiff's rights and subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights. Defendant and its agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against Defendant. The acts of Defendant were done fraudulently, maliciously and oppressively and with the advance knowledge, conscious disregard authorization, ratification or act of oppression on the part of Defendant's officers, directors, or managing agents. The actions and conduct of Defendant were intended to cause injury to Plaintiff and constituted deceit and concealment of material facts known to Defendant with the intention to deprive

9
PLAINTIFF'S TITLE VII COMPLAINT

Plaintiff of property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial of this matter by jury.

WHEREFORE, Plaintiff pray as follows:

## PRAYER FOR RELIEF - FOR ALL CAUSES OF ACTION

1. General damages;
2. Special damages;
3. Injunctive relief;
4. Civil penalties;
5. Exemplary and punitive damages;
6. Restitution;
7. Interest and costs of suit incurred herein;
8. Reasonable attorneys' fees;
9. For such other and further relief as the Court and/or jury deem just and proper.

Date: July 27, 2020

Respectfully submitted,
**ARI LAW, P.C.**

By: *Benjamin Martin*
Ali Ari Aalaei, Esq.
Benjamin Martin, Esq.
Attorneys for Plaintiff Ali Abbas